Filed 10/13/22  In re X.C. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| In re X.C. et al., Persons Coming Under the Juvenile Court Law. | C094620 |
| BUTTE COUNTY DEPARTMENT OF EMPLOYMENT AND SOCIAL SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>M.C. et al.,<br><br>        Defendants and Appellants. | (Super. Ct. Nos. 20DP00146, 20DP00147) |

Ma.C. (father) and W.C. (mother), parents of minors M.C. and X.C., appeal from the juvenile court's findings and orders made at the six-month review hearing.  (Welf. & Inst. Code, §§ 300, 366.21, subd. (e), 395.)[1]  The parents contend the following findings

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

were not supported by substantial evidence: (1) that under the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.), the Butte County Children's Services (Department) made active efforts to prevent the breakup of an Indian family; (2) that the Department provided reasonable reunification services; and (3) that returning the minors to the parents' care would be detrimental.

Additionally, the parents contend that the orders appealed as to M.C. must be vacated for lack of jurisdiction, based on this court's prior opinion in a previous appeal. We agree with this final contention, vacate the orders at issue, and otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*Petitions and Initial Detention*

On June 29, 2020, the Department filed non-detaining section 300, subdivision (b)(1) petitions asserting jurisdiction over two-week-old X.C. and eight-year-old M.C. The petitions were based on a child welfare referral indicating mother had tested positive for methamphetamine during her pregnancy with X.C. The petition also alleged that X.C. had withdrawal symptoms at his birth approximately one month later (b-2 allegation). X.C. was placed in a special care nursery overnight and returned to mother when his symptoms eased. Toxicology tests for both X.C. and mother at birth were negative for drugs. The petition also alleged that the parents did not have "adequate provisions to meet the basic needs" of the children and that the Department had been denied access to the children by the parents (b-1 allegation). Finally, the petition alleged that father "has drug related criminal history, which includes possession of paraphernalia, possession of narcotics, and related probation violations," and that he too had "failed to drug test on June 25, 2020, as requested" (b-3 allegation).

Mother is an enrolled member of the Assiniboine/Sioux-Fort Peck Tribe (Tribe), and the juvenile court found the ICWA applied.

2

On August 7, 2020, the Department filed a request for a protective custody order alleging that two days before, at the August 5 appearance for the continued jurisdiction hearing, the parents were asked to drug test and declined. A protective custody warrant was issued that same day.

A contested detention hearing was held on August 13, 2020. At the hearing, the social worker testified that mother would not voluntarily drug test without a court order in place. She testified that X.C. displayed signs of withdrawal at birth. Mother disputed that X.C. was placed in special care after his birth and that he had withdrawal symptoms. The juvenile court detained the minors.

*Jurisdiction*

The September 8, 2020, jurisdiction report indicated a witness from the hospital could testify to X.C.'s withdrawal symptoms. The report added that the parents had refused to drug test, sign releases, or participate in services.

At the contested jurisdiction hearing held on September 17, 2020, the social worker testified in a manner consistent with the petition and reports. She also testified about X.C.'s withdrawal symptoms and special care. She explained that mother claimed she was going to breastfeed X.C., which was a concern given mother's possible methamphetamine use. The juvenile court sustained the portion of the b-1 allegation that concerned the parents' denial of the Department's requested access to the children. The court sustained the b-2 and b-3 allegations.

*Disposition and Reversal on Appeal as to M.C.*

The Department filed a disposition report on October 19, 2020, and an addendum report and amended addendum report on December 23, 2020. In each of the reports, the Department recommended reunification services for both parents but concluded that the minors "cannot return to the care of their parents" due to mother's positive drug test, father's drug-related criminal history, and the parents' continued failure to test or cooperate with the Department.

At the hearing, an ICWA expert, Richard England, testified and recommended the minors be removed. He testified: "[T]he Department has been very diligent in their efforts to reach out to mother from the very beginning with contact to try and work with her. Mother has been very resistant and every time there's a solution, you know, provided to help address some of these issues, she finds reasons to be contrary to, you know, basically state that, you know, those things won't work. She's been just very obstinate in terms of engaging with the Department." Moreover, England stated: "I believe the active efforts are being provided and have been diligently since the beginning of the case."

The testimony from the parents' primary social worker centered on the parents' persistent failure to drug test. She added that both parents had a child welfare history indicating substance abuse, father had a history of methamphetamine use and a criminal history that "would suggest drug use," and mother had admitted that she had a history of alcohol abuse.

The juvenile court found both minors dependents and ordered services to both parents. It also completed form orders containing the requisite findings as to removal and the ICWA.

The parents appealed the jurisdiction and disposition orders. On October 26, 2021, this court reversed the jurisdictional orders as to the older child, M.C., and directed the juvenile court to dismiss the section 300 petition as to M.C. and that all subsequent findings and orders be vacated. (*In re X.C.* (Oct. 26, 2021, C093459) [nonpub. opn.].) We affirmed the jurisdictional findings and dispositional orders regarding X.C. (*Ibid.*)

*Six-Month Review*

On June 14, 2021, the Department filed a status review report, recommending that reunification services be terminated. According to the report, both parents had participated in some services; however, the parents also failed to complete assessments with the Butte County Department of Behavioral Health and sign releases of information.

4

In addition, the social worker made various attempts to conduct a room assessment and verify provisions for the minors, but she was unable to do so as a result of mother's failure to cooperate. Both parents failed to appear for random drug testing on 11 occasions, stating: " 'We decided we're not going to test for you.' " The Department had continued concerns about the parents' sobriety stemming from the failure to test, father's prior criminal history involving narcotics, and mother testing positive for methamphetamine while pregnant. Further, the report indicated that the housing and support program worker disclosed mother did not make serious efforts at obtaining housing through this program, and the parents' case worker reported that despite attempts to assist the parents with services, they did not make any efforts to receive cash assistance.

Regarding visitation, the report indicated that the parents started with supervised visits and that the "social services aides reported worries about the conversations the mother was having with [M.C.] . . . [who] was being informed of court dates and given false promises of returning home . . . [which] was affecting [his] emotional well-being." Moreover, mother was not adhering to the visitation guidelines.

On August 17, 2021, the Department filed an amended status review report, recommending continued reunification services to both parents.

At the contested six-month review hearing on August 31, 2021, the social worker testified that since she was assigned to the case, she had constantly reached out to the tribal representative but had not received a response. She had also been in contact with the minors' caregiver to ensure that the minors continued to be exposed to Native American ancestry. Moreover, the social worker testified that a comprehensive assessment of the minors' family had been conducted. The social worker also testified that the Department had engaged in available and culturally appropriate family preservation strategies by including maternal grandmother in visits, utilizing her to facilitate transportation for various services, and considering her for placement of the

subject minors. The social worker further testified that the parents had identified the lack of transportation and mental health issues as barriers to reunification. Psychological evaluations of the parents had previously been authorized to obtain "the actual diagnosis and [] tailor services to that diagnosis," but the parents had not followed through with evaluations. The social worker testified that she had offered to personally transport mother to services, but mother did not utilize this offer. The social worker attempted to transport mother for a drug testing appointment, but mother asked her to turn back during the drive.

The social worker further testified that the parents had not complied with the operative case plan by failing to obtain and maintain stable and suitable housing. They had been removed from their housing unit for failure to comply with the rules of the housing program and were living in a car. The social worker testified that the parents continuously failed to drug test as required by the case plan, including a court order to test one week before the hearing. On one occasion, the social worker attempted to assist mother in drug testing and waited for her to arrive at the testing site "for a couple of hours," but she never arrived.

Mother testified and admitted that she failed to appear for drug testing despite being ordered to do so a week prior; she claimed she went to the wrong testing location. She identified various purported medical issues as barriers to reunification.

At the conclusion of the hearing, the juvenile court found by clear and convincing evidence that active efforts had been provided; in doing so, it determined that the social worker was diligent in initiating contact with the Tribe to receive their input, and that the Tribe was non-responsive. The court found mother's testimony regarding her most recent failure to appear for drug testing not credible. It added that the parents' lack of cooperation regarding the psychological evaluation was a barrier for the Department working with the parents towards reunification and concluded the conditions that led to the dependency proceedings continue to exist, or are likely to exist, if supervision is

6

withdrawn. The court found that the case plan was reasonable and appropriate, that the Department complied with the case plan by making reasonable efforts to safely return the children to the parents' home, and that affirmative, active, thorough, and timely efforts had been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family. The active efforts had proven unsuccessful, and the parents' progress had been minimal. The court found that the return of the children to their parents would create a substantial risk of detriment to their safety, protection, and/or physical or emotional well-being. It continued reunification services for the parents.

The parents timely appealed. The case was assigned to this panel on July 25, 2022, and fully briefed on August 3, 2022. The parties waived argument and the case was submitted on September 20, 2022.

## DISCUSSION

### I

### *Substantial Evidence*

Father challenges the trial court's findings made at the six-month review hearing, and mother joins in father's arguments. The parents contend that the following findings are not supported by substantial evidence: (1) the active efforts finding; (2) the reasonable reunification services finding; and (3) the detriment finding.

We review the challenged findings for substantial evidence. (*In re Michael G.* (1998) 63 Cal.App.4th 700, 715-716 [active efforts]; *In re M.F.* (2019) 32 Cal.App.5th 1, 243 [reasonable reunification services]; *In re Shaundra L.* (1995) 33 Cal.App.4th 303, 316 [detriment].) We view the evidence in the light most favorable to the prevailing party, and we "must indulge in all legitimate and reasonable inferences to uphold the verdict." (*In re Misako R.* (1991) 2 Cal.App.4th 538, 545.) When "two or more inferences can reasonably be deduced from the facts, either deduction will be supported by substantial evidence, and a 'reviewing court is without power to substitute its deductions for those of the trial court.' " (*Ibid.*)

7

A. *Active Efforts Finding*

In a case involving an Indian child, the court must find that active efforts were made to provide remedial services and rehabilitative programs that were designed to prevent the breakup of the Indian family and that these efforts were unsuccessful. (See § 361.7.) Such a finding is necessary before any foster care placement of termination of parental rights order can be issued by the juvenile court. (*Ibid.*) "What constitutes active efforts shall be assessed on a case-by-case basis. The active efforts shall be made in a manner that takes into account the prevailing social and cultural values, conditions, and way of life of the Indian child's tribe. Active efforts shall utilize the available resources of the Indian child's extended family, tribe, tribal and other Indian social service agencies, and individual Indian caregiver service providers." (§ 361.7, subd. (b).)

We find substantial evidence that the Department provided active efforts throughout the pendency of this case to keep the family intact. At the detention hearing, the ICWA expert opined, "I believe the active efforts are being provided and have been diligently since the beginning of the case." The expert's opinion is consistent with the social worker's testimony at the six-month review hearing that she had constantly reached out to the tribal representative with no response; worked with the minors' caregiver to ensure that the minors continued to be exposed to Native American ancestry; conducted a comprehensive assessment of the minors' family; and engaged in available and culturally appropriate family preservation strategies by including maternal grandmother in visits and considering her for placement of the subject minors. Despite these efforts and the resources offered to the parents and aimed at remediating the problems that had led to the minors' removal, the parents failed to avail themselves of the tools provided and the Tribe declined to participate in the case. As the juvenile court reasoned: "When the social worker is contacting the Tribe and they're not returning her call, I think they have made the maximum efforts they can to get the input from that Tribe in coming forward with the information for that purpose." Indeed, the ICWA expert

8

stated that he had contacted "the Tribe and they stated that they are in agreement with the current circumstances and that the Department was diligent in their efforts to try and keep the children with family." This is substantial evidence supporting the court's finding that the Department made active efforts to the maximum extent possible.

The parents contend that "no substantial evidence supports the finding that active efforts were made, as there is no evidence that services were provided according to prevailing social and cultural conditions and way of life of the Indian child's tribe to the maximum extent possible, especially when obstacles to reunification appeared after the disposition hearing as to X.C." Specifically, the parents note that the social worker conceded she did not understand the prevailing tribal social and cultural conditions because she had not received any response from the Tribe. Active efforts are "timely and affirmative steps . . . to remedy problems which might lead to severance of the parent-child relationship." (*Letitia V. v. Superior Court* (2000) 81 Cal.App.4th 1009, 1016.) The parents do not suggest how any services related to the social and cultural values of the Tribe would have been of any use in remedying the problem which ultimately led to the breakup of this family (see § 361.7, subd. (b)), i.e., the parents' drug abuse. In the absence of any showing that there were services or resources which might have been useful in remedying the problem underlying the dependency, the parents have failed to meet their burden on appeal of demonstrating prejudicial error. (*State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 610.)

B.  *Reasonable Reunification Services Finding*

When the juvenile court orders reunification services, the child welfare agency must tailor those services to the needs of the family and design them to alleviate the circumstances that gave rise to the child becoming a dependent of the court. (*In re Taylor J.* (2014) 223 Cal.App.4th 1446, 1451.) The child welfare agency "must make a good faith effort to develop and implement a family reunification plan. [Citation.] '[T]he record should show that the supervising agency identified the problems leading to

9

the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult.' " (*Amanda H. v. Superior Court* (2008) 166 Cal.App.4th 1340, 1345; see *In re K.C.* (2012) 212 Cal.App.4th 323, 329-330.) The child welfare agency must attempt to provide reasonable reunification services even if it is difficult to do so or the prospects of reunification are low at the time the court orders the services. (*In re Taylor J.,* at p. 1451; see *In re Alvin R.* (2003) 108 Cal.App.4th 962, 973 ["*Some* effort must be made to overcome obstacles to the provision of reunification services"].)

Here, the parents participated in a number of reunification services. However, they persisted in their refusal to drug test throughout the review period, including a direct court order to test one week before the six-month review hearing. On one occasion, the social worker attempted to assist mother in drug testing and waited for her to arrive at the testing site "for a couple of hours," but mother never arrived. On another, the social worker attempted to transport mother for a drug testing appointment, but mother asked her to turn back during the drive. While the parents claimed psychological issues were barriers to reunification, the parents failed to sign the releases to authorize psychological evaluations. Additionally, the parents had not complied with the operative case plan by failing to maintain stable and suitable housing, losing their housing unit for failure to comply with the rules of the housing program. The social worker made various attempts to conduct a room assessment and verify provisions for the minors, but she was unable to do so as a result of mother's failure to cooperate. The record is replete with evidence of the Department's reasonable efforts to facilitate reunification services. (See *In re Jonathan R.* (1989) 211 Cal.App.3d 1214, 1220 [reasoning that "reunification services are voluntary, and cannot be forced on an unwilling or indifferent parent"].) Accordingly, we conclude that the juvenile court's finding is supported by substantial evidence.

10

C. *Detriment Finding*

At the six-month review hearing, the court must return the child to the physical custody of the parents unless the court finds that returning the child to the parents "would create a substantial risk of detriment to the safety, protection or physical or emotional well-being of the child. . . . The failure of the parent . . . to participate regularly and make substantive progress in court-ordered treatment programs shall be prima facie evidence that return would be detrimental." (§ 366.21, subd. (e).) "[T]he court . . . shall consider the efforts or progress, or both, demonstrated by the parent . . . and the extent to which he or she availed himself or herself to services provided." (§ 366.21, subd. (e).)

Here, the juvenile court recognized the parents made progress in some services, including counseling. But the court also noted some troubling deficiencies in the parents' cooperation with the Department, particularly as to drug testing and mental health evaluation. The court also expressed concern about the parents' lack of stable housing. Indeed, as of the hearing date, the parents had been removed from their housing unit for failure to comply with the rules of the housing program and were residing in their car despite receiving multiple opportunities to secure alternative housing. Until some of these deficiencies in substantive progress were resolved, the minors remained at risk in the parents' care. (See § 366.21, subd. (e).) We conclude that substantial evidence supports the juvenile court's finding of detriment and its order continuing the minors in out-of-home placement.

II

*Jurisdiction Over M.C.*

Regarding the older child, M.C., the parents request we vacate the juvenile court's orders entered on July 1 and August 31, 2021, as to M.C., given the disposition in *In re X.C., supra,* C093459. The Department did not respond to this request in its briefing. We agree the orders must be vacated because on October 26, 2021, this court reversed the

11

jurisdictional orders as to M.C., directed the court to dismiss the petition as to M.C., and directed that all findings and orders stemming from the petition be vacated. (*Ibid*.)

"Where a reviewing court reverses a judgment with directions . . . the trial court is bound by the directions given and has no authority to retry any other issue or to make any other findings. Its authority is limited wholly and solely to following the directions of the reviewing court." (*Rice v. Schmid* (1944) 25 Cal.2d 259, 263.) No subject matter jurisdiction persisted after the decision and remittitur by this court as to M.C.

On January 3, 2022, the juvenile court merely dismissed M.C.'s dependency case, but did not vacate the postdisposition orders. The juvenile court's orders are void as to M.C. (See *Carter v. Superior Court* (1950) 96 Cal.App.2d 388, 391 ["The courts have repeatedly adhered strictly to the rule [in *Rice v. Schmid*] . . . Any proceedings had or judgment rendered contrary to such specific directions would be void"].) Accordingly, we will direct the juvenile court to vacate the July 1 and August 31, 2021 orders as to M.C. for lack of jurisdiction.

### DISPOSITION

The juvenile court is directed to vacate the July 1, 2021 and August 31, 2021 orders as to minor M.C. for lack of jurisdiction. The orders of the juvenile court as to minor X.C. are affirmed.

/s/
Duarte, Acting P. J.

We concur:

/s/
Hoch, J.

/s/
Renner, J.

12